Mary CORNELIUS, Administratrix
of the Estate of Akeem L.
Cornelius, deceased

v.

Isaac ROBERTS, Edward Grynkewicz,
III and The Harrisburg Police
Bureau, City of Harrisburg.

Appeal of: Edward Grynkewicz,
III and The Harrisburg Police
Bureau, City of Harrisburg.

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided June 5, 2013.

---

Scott D. McCarroll, Harrisburg, for appellants.

David J. Chapman, Harrisburg, for appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Appellants Edward Grynkewicz, III, (Officer) and the Harrisburg Police Bureau of the City of Harrisburg (collectively Defendants) appeal the May 24, 2011 order of the Dauphin County Court of Common Pleas (Trial Court) dismissing Defendants' preliminary objections. On June 29, 2011,

the order was amended by the Trial Court to allow for an interlocutory appeal by permission.[1]

■ The events at issue here began late on April 18, 2010, leading into the early hours of April 19, 2010, in the area of 13th and Berryhill Streets in the city of Harrisburg, Pennsylvania. (Complaint ¶¶ 7, 11.) Isaac Roberts (Roberts) was operating a vehicle and engaged in activity that caught the attention of the Officer. (Complaint ¶ 8.) The Officer activated his lights and began to pursue Roberts, who failed to pull over and stop his vehicle. (Complaint ¶ 9.) Instead, Roberts continued Northbound on 7th Street at a high rate of speed with his vehicle headlights turned off. (Complaint ¶ 8.) The Officer, also traveling at a high rate of speed, continued to pursue Roberts. (Complaint ¶ 9.) At the intersection of North 7th Street and Maclay Street, the vehicle operated by Roberts collided with the right passenger side of a vehicle traveling Eastbound that was operated by James Peck. (Complaint ¶¶ 7, 13.) As a result of the collision, Akeem L. Cornelius, a passenger in the vehicle operated by James Peck, was taken to Harrisburg Hospital, where he ultimately died from severe injuries sustained in the collision. (Complaint ¶ 14.)

On October 14, 2010, Mary Cornelius, Administratrix of the Estate of Akeem L. Cornelius, deceased (Plaintiff), filed a civil action complaint sounding in tort against Defendants. In the complaint, Plaintiff alleges that the Officer operated his vehicle in a negligent manner, initiating and maintaining a high speed pursuit in violation of Harrisburg Police Bureau regulations. (Complaint–Count I.) Plaintiff also alleges that the Harrisburg Police Bureau was negligent in failing to train and supervise the Officer involved in the vehicle pursuit. (*Id.*) Defendants filed preliminary objections in the nature of a demurrer on the grounds that the Officer did not owe a duty of care to the decedent and that the Harrisburg Police Bureau is protected from negligence claims for failure to train and supervise the Officer by governmental immunity. (Preliminary Objections I & II.)

■ Following argument on the Defendants' preliminary objections, the Trial Court dismissed Defendants' preliminary objections without prejudice, stating:

> [w]hether or not the actions of the police vehicle and its operator in initiating and/or maintaining the pursuit of the vehicle operated by Defendant Isaac Roberts, became a liability issue factually causing the events that followed, we are unable to say with the requisite legal certainty at this juncture that no viable cause of action may be maintained as pled by Plaintiff.

(Trial Court Order, May 24, 2011.) On August 17, 2011, following certification by the Trial Court, this Court granted Defendants' petition for permission to appeal the Trial Court's interlocutory order.[2]

■ Before this Court, Defendants contend that a local agency and its police

---

1. *See* 42 Pa.C.S. § 702(b); Pa. R.A.P. 1311(b).

2. When an appellate court reviews an order ruling on preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary. *Mazur v. Trinity Area School District,* 599 Pa. 232, 241, 961 A.2d 96, 101 (2008). In addition, we "must accept as true all material facts set forth in the complaint and all infer-

ences reasonably deducible therefrom. A demurrer presents the question of whether, on the facts averred, the law says with certainty that no recovery is possible; where any doubt exists, it should be resolved in favor of overruling the demurrer." *Black v. Shrewsbury Borough,* 675 A.2d 381, 383 (Pa.Cmwlth. 1996).

employees do not owe a common law duty to innocent bystanders during police pursuits of fleeing suspects. Defendants also argue that, under Section 8541 of the Judicial Code (Tort Claims Act) [3], 42 Pa.C.S. § 8541, a local agency and its police employees are immune from negligence claims stemming from a police pursuit, where the alleged negligence is based on the act of pursuing a fleeing wrongdoer and not the actual operation of the vehicle. Plaintiff contends that the Defendants' conduct falls within the vehicle exception to governmental immunity, because the manner in which the pursuit was conducted cannot be severed from the operation of the police vehicle. Plaintiff also argues that a local agency and its police employees do have a common law duty to innocent bystanders during a police pursuit.

The issues raised by the parties here directly address this Court's opinion in *Aiken v. Borough of Blawnox*, 747 A.2d 1282, 1285 (Pa.Cmwlth.), *allocator denied*, 564 Pa. 714, 764 A.2d 1072 (2000), which Defendants argue was wrongly decided. *Aiken* followed upon the Supreme Court's decision in *Jones v. Chieffo*, 549 Pa. 46, 700 A.2d 417 (1997) [4], which addressed the issue of whether innocent bystanders could recover under the Tort Claims Act for injuries allegedly sustained due to the negligent operation of an agency vehicle during a police pursuit. Overruling an earlier decision, *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992), the Court in *Jones* held that negligent or criminal acts of fleeing suspects do not, as a matter of law, constitute a superseding cause that prevents a trier of fact from finding negligent acts by police officers a substantial factor in causing innocent bystanders harm. The Court stated:

> We cannot hold as a matter of law that [the police officer's] alleged negligence was not a substantial factor causing [the innocent motorist's] injuries. A jury must make that determination. Similarly, *Dickens* should have gone beyond the pleadings stage to discover whether there was support for the plaintiff's allegation that the officer negligently failed to follow pursuit procedures. This result is consistent with *Crowell* and *Powell*, which establish that a governmental party is not immune from liability when its negligence, along with a third party's negligence, causes harm.

549 Pa. at 52, 700 A.2d at 420.[5] Following *Jones*, this Court recognized in *Aiken*, that

3. The act for which the "Political Subdivision Tort Claims Act" is the formal title has been repealed. Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §§ 5311.101–5311.803, repealed by the Act of October 5, 1980, P.L. 693. The "Tort Claims Act," has remained as the unofficial title for the successor provisions found in Sections 8541–8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542.

4. In *Jones*, a police officer observed three vehicles without activated headlights travel through a stop sign and red light, heard gunshots, and then pursued the vehicles at a high rate of speed. 549 Pa. at 48, 700 A.2d at 418. Although the officer alerted his superiors and activated his dome lights, the siren in his cruiser was not functioning. *Id.* When two of

the cars ran a second red light, with the officer pursuing them, one of the cars crashed into an innocent motorist. *Id.* Upon entering the intersection, the innocent motorist had not been able to see the vehicle without headlights or the police cruiser, and due to the high rate of speed with which the wrongdoer motorist was traveling, was unable to avoid a collision. *Id.* The innocent motorist alleged the non-functioning siren, the supervisor's failure to terminate the pursuit, and poor vehicle maintenance could lead a jury to find that the negligence of the government entity was a substantial factor in causing the alleged harm. *Jones*, 549 Pa. at 50, 700 A.2d at 419.

5. *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), decided the same day as *Dickens*, concerned a drunk driver who

a local agency and its employees owe a common law duty to innocent bystanders in the operation of a police vehicle during police pursuits of fleeing suspects, stating, "[W]e hold that innocent bystanders, like Appellant, can maintain an action against the government alleging that police officers negligently maintained a high-speed pursuit." 747 A.2d at 1285. *Aiken* involved a high-speed police pursuit of a fleeing suspect that ended when the fleeing suspect collided with a vehicle driven by an innocent bystander. 747 A.2d at 1283. The innocent bystander sustained permanent injury and subsequently filed a civil action against the local agency involved, alleging permanent disability as a result of a negligently maintained high-speed pursuit of a fleeing suspect. *Id.* The innocent bystander in *Aiken* alleged that the local agency was liable under the vehicle exception to the Tort Claims Act; the local agency moved for summary judgment, claiming governmental immunity, and following a grant of summary judgment, the innocent bystander appealed to this Court. 747 A.2d at 1284. In overruling the lower court's grant of summary judgment, this Court reasoned that *Jones* and amendments to the vehicle exception to the Tort Claims Act required the conclusion that an innocent bystander can maintain a cause of action against a local agency for negligent maintenance of a high-speed police pursuit. 747 A.2d at 1285.

■ Section 8541 of the Tort Claims Act provides that local agencies and agency employees are immune from tort liability:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. § 8541. The text of Section 8541 unequivocally shields local government units from tort liability, but the "except as otherwise provided language" also makes clear that this grant of immunity is not absolute. *Id.* Section 8542 of the Tort Claims Act sets forth eight enumerated exceptions under which a local agency or its employees may still be liable for damages for acts that cause injury to persons or property. 42 Pa.C.S. §§ 8541–8542. Prior to an examination of whether a claim may fall within one of these exceptions, Subsection 8542(a) requires that the following two conditions must be established: (1) that damages would be recoverable under common law or a statute creating a

had followed a wrongly placed sign with an arrow that directed motorists to turn, thereby crossing into another lane of traffic, and striking a car containing a family. *Crowell*, 531 Pa. 400, 613 A.2d 1178. The drunk driver was ultimately held by a jury to be jointly liable for negligence with the government entity responsible for placing the sign. *Id.* On appeal, our Supreme Court rejected the argument for immunity under Section 8541, holding that while the Act precluded vicarious liability, a government entity could be held jointly liable under the Act, despite the presence of a third party, if the entity was jointly negligent. *Id.* at 413, 613 A.2d at 1184. In *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995), a decedent's estate sued a drunk driver and the Commonwealth, alleging that

the negligent design of the road where the accident occurred made the Commonwealth jointly liable for the car accident and precluded immunity under the act commonly known as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–8522. On appeal from the Commonwealth's preliminary objections, which had been sustained by the trial court, our Supreme Court held that liability was not precluded as a matter of law, because the proper focus of the inquiry was not the criminal nature of the act, but whether the act was reasonably foreseeable, and that it was for the trier of fact to make the determination of whether, under this analysis, the Commonwealth's actions were a substantial factor in causing harm to the decedent. *Id.* at 495, 653 A.2d at 624.

cause of action if the injury were caused by a person not having available the defense of immunity; and (2) that the injury was caused by a negligent act of the local agency or its employee acting within the scope of his or her office or duties. 42 Pa.C.S. § 8542(a)(1)-(2). If a plaintiff is able to satisfy these initial conditions, a plaintiff must then demonstrate that the alleged negligent act falls within one of the eight enumerated exceptions to governmental immunity in Subsection 8542(b). 42 Pa.C.S. § 8542(a). However, the General Assembly's clear intent to insulate local agencies and agency employees from tort claims mandates that Pennsylvania courts construe these eight exceptions to immunity narrowly. *Love v. City of Philadelphia*, 518 Pa. 370, 374, 543 A.2d 531, 532 (1988) (*citing Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987)).

■ The vehicle exception to local governmental immunity provides that a local agency or its employees may be liable for damages on account of an injury to a person or property arising out of the operation of any motor vehicle in the possession or control of the local agency. 42 Pa.C.S. § 8542(b)(1).[6] The vehicle exception also contains an exception to the exception, which prevents those who flee from or aid those fleeing from police from recovering for injuries brought upon by a police officer's operation of a vehicle in the course of attempting to stop or apprehend fleeing wrongdoers. *Id.* The purpose of this language is to weed out wrongdoers from innocent bystanders injured in police pursuits and assure that wrongdoers do not get the benefit of the Commonwealth's tort

protection for actions that may have endangered police officers and the public. *Lindstrom v. City of Corry*, 563 Pa. 579, 586, 763 A.2d 394, 398 n. 3 (2000) (citing Pennsylvania Legislative Journal–House, June 29, 1995, Reg. Sess. No. 60 at 1784). As in *Aiken*, we believe the specific delineation of these two categories within the vehicle exception suggests that the General Assembly did not intend to remove all parties injured by the negligent operation of a police vehicle during a police pursuit from the class of individuals able to recover under the Tort Claims Act, but rather for innocent bystanders to remain eligible to recover from a local agency and its employees, if injured during a police pursuit due to the negligent operation of a vehicle in the possession or control of the local agency.

This conclusion is supported by the Supreme Court's decision in *Lindstrom*, which was argued and decided after *Aiken*. In *Lindstrom*, when faced with the question of whether a common law duty is owed to fleeing suspects in a case that arose prior to the General Assembly's amendment to the vehicle exception, the Supreme Court specifically distinguished the common law duty owed to innocent bystanders that it recognized in *Jones*, stating that *Jones* "is not relevant to the issue of whether a local agency owes a common law duty to a driver who flees from a police officer. *Jones* involved an innocent third party injured during the course of a police chase, which does not influence our analysis regarding the duty owed to a fleeing suspect himself." *Lindstrom*, 563 Pa. at 586, 763 A.2d at 398 n. 2.

---

**6.** The exception states: "(1) Vehicle Liability.—The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer . . ." 42 Pa.C.S. § 8542(b)(1), *as amended*, Act of July 6, 1995, P.L. 290 No. 43, § 1.

Similarly, in this Court's analysis of whether a duty of care is owed to passengers in a vehicle operated by a fleeing wrongdoer, we again distinguished innocent bystanders as a class to which a duty of care is owed during a police pursuit:

there is no question that officers in this situation owe no duty of care to the wrongdoers they pursue, *Lindstrom,* 563 Pa. at 586, 763 A.2d at 398 n. 3 (2000), but owe a duty of care only to innocent third parties, *Jones v. Chieffo,* 549 Pa. at 52, 700 A.2d at 420 (1997). To date, however, the innocent third parties to whom a duty of care is owed were found to have been bystanders unconnected with the wrongdoer or the vehicle being pursued. *Jones; Aiken.* We believe that to extend this duty to unknown passengers (such as decedent) in the fleeing vehicle would be contrary to the analysis of factors set out by our Supreme Court in *Lindstrom.*

*Sellers v. Township of Abington,* 67 A.3d 863, 2013 WL 2420420 (Pa.Cmwlth.2013) (*en banc*). Finally, the duty of care owed to innocent bystanders recognized in *Jones, Aiken, Lindstrom and Sellers* are consistent with Pennsylvania decisions made prior to *Dickens,* where negligence actions under the Tort Claims Act were barred on other grounds and the common law duty owed to innocent bystanders was not questioned. *See, e.g., Herron v. Silbaugh,* 436 Pa. 339, 260 A.2d 755 (1970); *Roadman v. Bellone,* 379 Pa. 483, 108 A.2d 754 (1954); *Cavey v. City of Bethlehem,* 331 Pa. 556, 1 A.2d 653 (1938); *Kuzmics v. Santiago,* 256 Pa.Super. 35, 389 A.2d 587 (1978). Accordingly, we must reject Defendants' contention that a local agency and its police employees do not, as a matter of law, owe a common law duty to innocent bystanders during police pursuits of fleeing suspects.

We must also agree with the contention made by Plaintiff and supported by *Jones* and *Aiken* that, at this stage of the proceedings, it cannot be said with certainty that the negligence alleged is based solely upon the act of pursuing a fleeing wrongdoer, rather than the actual operation of the vehicle during the pursuit.

The Supreme Court, in *Love v. City of Philadelphia,* examined use of the word "operation" in the vehicle exception to the Tort Claims Act and found that the term meant to "actually put in motion." 518 Pa. at 375, 543 A.2d at 533. Following *Love,* in *Mickle v. City of Philadelphia,* 550 Pa. 539, 707 A.2d 1124 (1998), the Court examined the interplay of the use of "operation" and "with respect to" in the vehicle exception. In *Mickle,* the plaintiff was injured while being transported to the hospital in a city fire rescue van. *Id.* Although the driver was not found to have driven in a negligent manner, while en route to the hospital the left rear wheels of the rescue van came off, and the plaintiff was seriously injured. *Id.* The Court concluded that, although the manner of driving at issue was not negligent:

Negligence related to the operation of a vehicle encompasses not only how a person drives but also whether he should be driving a particular vehicle in the first place. The motor vehicle exception does not say that liability may be imposed only where the operator's manner of driving is negligent. Rather, it requires that the injury is caused by a negligent act with respect to the operation of a motor vehicle.

*Mickle,* 550 Pa. at 543, 707 A.2d at 1126.

Mindful that the vehicle exception must be strictly construed, but that operation of a vehicle encompassed more than simply how a individual drives, the outer bounds of a negligent act with respect to the operation of a motor vehicle was addressed by

the Supreme Court in *Regester v. County of Chester,* 568 Pa. 410, 797 A.2d 898 (2002). In *Regester,* the Court examined the alleged negligence of paramedics in failing to follow driving directions relayed by the paramedics' dispatch, causing a delayed arrival that proved critical to the inability of the paramedics to revive a decedent. *Id.* The plaintiffs argued for a rule that would have allowed for all negligent decision-making occurring within the course of the operation of a vehicle to fall within the vehicle exception. *Regester,* 568 Pa. at 418, 797 A.2d at 903. The Court noted that its own decisions, as well as those of this Court, "establish that the vehicle liability exception encompasses more than merely negligent driving." 568 Pa. at 420, 797 A.2d at 904. However, the Court found that there was no "controlling authority" for the broad rule that "any and all decisions made during the operation of a vehicle implicate the exception." *Id.* The Court held that the medics' failure to follow directions and maintain adequate familiarity with the area did not implicate the vehicle exception, stating:

> Here, while properly acknowledging that there is some range of negligence associated with the physical operation of a vehicle beyond actual driving that will implicate the vehicle liability exception, the Commonwealth Court correctly concluded that the form of negligence alleged by the Regesters does not qualify.

To the contrary, such allegations of negligence … [are] more closely associated with the public service involved (ambulance service) than it is with the physical operation of the vehicle as such.

568 Pa. at 421, 797 A.2d at 904.

Here, Defendants essentially argue that the allegations in Plaintiff's complaint amount to a claim that, like the allegations against the ambulance drivers in *Regester,* Defendants negligently carried out a public service by pursuing fleeing wrongdoers, instead of claiming that Defendants negligently operated a vehicle. However, this Court concluded in *Aiken* that "[t]here is no legal distinction between the police officers' decision to continue the pursuit and the operation of the vehicles continuing the pursuit. At least, no such distinction [that] can be read into the plain meaning of Section 8542(b)(1) of the [Tort Claims Act]."[7] 747 A.2d at 1285. The Superior Court reached the same conclusion in *Kuzmics v. Santiago,* where it removed a compulsory nonsuit in a case where a vehicle pursued by police collided with an innocent motorist and remanded the case to the jury to determine whether the operation of police vehicles was negligent, identifying the following as factors to be considered by the factfinder: "speed of pursuit, the area of pursuit, and the presence or absence of audible or visual warnings."[8] 256

7. *See also Angle v. Miller,* 157 Pa.Cmwlth. 181, 629 A.2d 238, 240 (1993) ("the trial court was in error when it stated liability did not attach because the police vehicle did not actually contact the plaintiff's vehicle. We see nothing in section 8542(b)(1) which requires 'impact.' It may well be that, in other circumstances, the negligent operation of a motor vehicle in a local agency's control could be a substantial factor in bringing about an accident without that vehicle's actual contact with another car. However, our agreement with Miller on this theory does not

change our disposition of this case. *Dickens* controls Miller's appeal herein.")

8. It is of note that within the Vehicle Code, the General Assembly set forth a doctrine granting certain privileges to the drivers of emergency vehicles, including police officers, but conditioned those privileges on the duty to drive with due regard for the safety of all persons:

> "(a) General rule.—The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law …

Pa.Super. 35, 389 A.2d 587, 591. *Accord, Jones,* 549 Pa. at 52, 700 A.2d at 420 ("*Dickens* should have gone beyond the pleadings stage to discover whether there was support for the plaintiff's allegation that the officer negligently failed to follow police procedures."). Thus, we agree with the Trial Court that, on this limited record, we cannot say with certainty that the actions of the Officer in operating his police vehicle in pursuit of Roberts was not a substantial factor in causing decedent's injuries. Accordingly, the demurrer was properly overruled.

The order of the Trial Court is affirmed and the matter is remanded for further proceedings.

### ORDER

AND NOW, this 5th day of June, 2013, the order of the Dauphin County Court of Common Pleas dismissing preliminary objections in the above-captioned matter is AFFIRMED and the matter is REMANDED for further proceedings.

Jurisdiction relinquished.

may exercise the privileges set forth in this section, but subject to the conditions stated in this section.

(b) Exercise of special privileges.-The driver of an emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this part.

(2) Proceed past a red signal indication or stop sign, but only after slowing down as may be necessary for safe operation ...

(3) Exceed the maximum speed limits so long as the driver does not endanger life or property. ...

(4) Disregard regulations governing direction of movement, overtaking vehicles or turning in specified directions.

(c) Audible and visual signals required.—The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department.

* * *

(e) Exercise of care.—This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons ..."

75 Pa.C.S. § 3105. Based on the complaint, it is not clear that Defendants exercised the care called for from the operators of emergency vehicles.